UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| HERIBERTO MELENDEZ, | : | |
| | : | Bankruptcy No. 16-17905-AMC |
| DEBTOR | : | |
| | : | |
| DAVID MARTIN & RUTH MARTIN, | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | Adv. Proc. No. 17-00068-AMC |
| V. | : | |
| | : | |
| HERIBERTO MELENDEZ, | : | |
| | : | |
| DEFENDANT | : | |

Ashely M. Chan, United States Bankruptcy Judge

OPINION

I.    INTRODUCTION

In October 2016, the plaintiffs, David and Ruth Martin ("Plaintiffs"), obtained a prepetition judgment ("Judgment") in the Chester County Court of Common Pleas ("CCP") against the debtor, Heriberto Melendez ("Debtor"). Memo in Supp. of Pls.' Mot. for Summ. J. ("Mot.") Ex. 1 at 6-7. In connection with the Judgment, the CCP determined that the Debtor had breached a contract by knowingly supplying the Plaintiffs with a false seller's disclosure statement ("Disclosure Statement") to induce them into purchasing his real property located at 270 Morris Street, Phoenixville, Pennsylvania ("Property"). *Id.* at 4.

In this adversary proceeding, the Plaintiffs seek to have the Judgment declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Mot. at 6. On summary judgment, the Plaintiffs established all but one element necessary to sustain a § 523(a)(2)(A)

1

nondischargeability claim. Trial proceeded on the sole remaining issue of whether the Debtor made the representations in the Disclosure Statement with the intent and purpose of deceiving the Plaintiffs.[1]

The Court finds that credible, circumstantial evidence supports the Plaintiffs' position that the Debtor intended to deceive the Plaintiffs by making false representations about the Property's condition in the Disclosure Statement. Furthermore, even if the Debtor had established that he did not read the Disclosure Statement before signing it, his reckless indifference to its truth establishes intent to deceive sufficient to support a finding that the Judgment is nondischargeable pursuant to § 523(a)(2)(A).

## II.   FACTS AND PROCEDURAL HISTORY

On March 11, 2013, the Plaintiffs executed an agreement of sale for the Property with the Debtor and his partner, Daniel Pearson ("Pearson"). Mot. Ex. 1 at 2. The Debtor and Pearson had decided to sell the Property because it had become a "money pit" which they could no longer afford to maintain after Pearson lost his job and they exhausted all their savings. Trial June 28, 2018 (hereinafter "BK Trial") Ex. D-1 p. 20 lines 14-21; p. 52 lines 7-14. On the same day that the Plaintiffs executed the agreement of sale, the Debtor and Pearson signed and delivered the Disclosure Statement to the Plaintiffs. Mot. at p. 15, ¶ 5. The Disclosure Statement represented, in pertinent part, that: the basement only experienced slight water damage during heavy rains, the Property had no stucco, the floor had no defects, the Debtor and Pearson were unaware of past

---

[1] Although the Debtor did not attend the trial, his attorney appeared and argued on his behalf. The Debtor had not attended the summary judgment hearing months prior and had not attended the pre-trial conference. The Debtor's attorney represented that he has been unable to reach his client for months. Trial Tr. June 28, 2018 p. 3 lines 10-15. Nevertheless, because the Plaintiffs have the burden of proof for establishing the necessary elements of a section 523(a)(2)(A) claim and because it is preferable to determine cases involving missing parties on the merits, the Court held a trial on the merits. *In re Adalian*, 474 B.R. 150, 161 (Bankr. M.D. Pa. 2012); *In re Kramer*, 317 B.R. 297, 299-300 (Bankr. W.D. Pa. 2004); *In re Walters*, 176 B.R. 835, 876-77 (Bankr. N.D. Indiana 1994).

2

sewer problems, they had made no alterations to the Property, and the Property had no problems with the electrical system. *Id.* Ex. 1 at 2-4.

In April 2013, following a home inspection, the Plaintiffs purchased the Property. *Id.* at p. 1, ¶ 1. After the purchase, the Plaintiffs discovered serious defects to the Property which were not disclosed in the Disclosure Statement. *Id.*; Ex. 1 at 2-4; Trial Tr. June 28, 2018 (hereinafter "BK Trial Tr.") p. 20 lines 17-25-p. 21 lines 1-9. Had the defects been disclosed, the Plaintiffs would not have purchased the Property. Trial Tr. Sept. 26, 2016 (hereinafter "State Trial Tr.") p. 151 line 23; p. 152 lines 1-4; 12-16; p. 153 lines 5-10. The Plaintiffs had not discovered some of the defects during the home inspection because certain materials and items had hidden them. For instance, concrete had concealed damage to the sewer pipe, while cars in the garage had prevented the Plaintiffs from discovering that the ladder leading to the water-damaged attic was broken. BK Trial Tr. p. 13 line 12; p. 19 lines 15-25; p. 22 lines 19-23; p. 37 lines 12-25.

In July 2014, the Plaintiffs filed a lawsuit in the CCP against the Debtor, Pearson, and other parties not involved in this adversary proceeding.[2] Mot. at ¶ 2. Initially, a default judgment was entered against the Debtor on December 7, 2015. *Id.* at ¶ 3. On January 15, 2016, the Debtor's deposition was taken. *See* BK Trial Ex. D-2. In response to questioning about whether he had read the Disclosure Statement, he responded that "I am broken English. I trust what he [Pearson] tell me about it." *Id.* p. 8 line 19-20; BK Trial Tr. p. 32 lines 2-5. Subsequently, the Debtor filed a petition to open and strike the default judgment, which the CCP granted on March 11, 2016. Mot. at p. 2, ¶ 5, Ex. 4.

---

[2] The case is captioned *Ruth and David Martin v. Thomas Skiffington and Marian Fraticelli t/d/b/a RE/MAX 440 Realty, Inc., Skiff Re Business Inc., Mary Southern, H&H Home Inspection, Inc., Paul Hollup, Daniel Pearson, and Heriberto Melendez*, Chester County Court of Common Pleas, July Term, 2014, No. 14-02149. Mot. Ex. 1.

3

A trial was held on September 26, 2016. *Id.* at ¶ 6, Ex. 5. On October 3, 2016, the CCP entered judgment in favor of the Plaintiffs and against the Debtor and Pearson in the amount of $63,964.00 for damages sustained, holding that the Plaintiffs had proven by a preponderance of the evidence that the Debtor and Pearson had "breached the contract [with the Plaintiffs] by supplying a false seller's disclosure statement to induce the Plaintiffs to purchase the property." Mot. Ex. 1 at 4, 6. In connection with this holding, the CCP made numerous findings, including that the Debtor had knowingly made false representations in the Disclosure Statement which proximately caused damage to the Plaintiffs. *Id.* at 3; Summ. J. Order at ¶ 10.

The CCP also found that, contrary to representations in the Disclosure Statement that the basement experienced only minor leaking during heavy rains, the basement actually showed signs of substantial, recurring water damage. Mot. Ex. 1 at 2-3. The CCP further found that the Property contained buckling, sagging floors, improperly installed bathroom floors, and crumbling stucco hidden under aluminum siding. *Id.* at 3. Even more disturbing, the CCP concluded that the Debtor knew about past sewer problems[3] and significant, dangerous problems with the electrical system[4] despite representations in the Disclosure Statement that he was not aware of any of these problems. *Id.* at 3-4. Finally, despite representing that they had made no alterations to the Property, the Debtor and Pearson had actually made numerous substandard, unsafe alterations to the Property.[5] *Id.*

---

[3] The CCP found a plumber had credibly testified that years before the Plaintiffs purchased the Property, the Debtor had rejected the plumber's recommendation to replace a cracked sewer pipe. Mot. Ex. 1 at 3.

[4] There were outlets missing, exposed wire behind a gas stove, hazardous wiring under a Jacuzzi, wiring service not connected to the electrical panel, wiring via an extension cord providing power to the garage, and dangerous service feeds. Mot. Ex. 1 at 4.

[5] The Court gives preclusive effect to the CCP's factual findings regarding the Property's defects and the misrepresentations in the Disclosure Statement. Collateral estoppel allows the Court to accept certain factual findings from a previous action as evidence of nondischargeability and to consider whether those findings establish the elements of nondischargeability under section 523. *In re Jacobs,* 381 B.R. 128, 143-44 (Bankr. E.D. Pa. 2008). In determining whether certain findings are entitled to preclusive effect, federal courts must apply the collateral estoppel doctrine of the state where the judgment was entered. *Estate of Tyler ex. Rel. Floyd v. Grossman,* 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015). Under Pennsylvania law, collateral estoppel precludes relitigation of an issue of

4

On November 10, 2016, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Case No. 16-17905 ECF Doc. 1. On March 7, 2017, the Plaintiffs filed the instant adversary proceeding seeking to have the Judgment deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Case No. 17-00068 ECF Doc. 1-2. On December 18, 2017, the Plaintiffs filed their Motion for Judgment on the Pleadings Or in the Alternative for Summary Judgment (hereinafter "Motion for Summary Judgment" or "Summary Judgment"). *Id.* at 23. On February 20, 2018, the Court granted the Plaintiffs' Motion for Summary Judgment in part, finding that collateral estoppel bound the Debtor from challenging the CCP's findings that the Debtor knowingly made false representations in the Disclosure Statement and that the Plaintiffs suffered damages as a result of those representations. *Id.* at 44; Summ. J. Order at ¶ 10. The Debtor conceded at the Summary Judgment hearing that the Plaintiffs had justifiably relied on the false statements in the Disclosure Statement. Tr. Summ. J. Hrg. Jan. 17, 2018 (hereinafter "Tr. Summ. J.") p. 7 lines 4-5. Subsequently, on June 28, 2018, the Court held a trial solely to consider whether the Debtor made false representations in the Disclosure Statement with the intent to deceive required under § 523(a)(2)(A).

---

fact or law determined in a prior action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity to a party in the prior case; (4) the party or person in privity to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *In re Kamps,* 575 B.R. 62, 76 (Bankr. E.D. Pa. 2017). The Court can easily determine that the CCP made a final adjudication on the merits, that the party against whom collateral estoppel is asserted – the Debtor – was a party in the CCP action, and that the Debtor had a full and fair opportunity to litigate the issues. The CCP's findings that the Property contained defects and that the Disclosure Statement misrepresented those defects were essential to the outcome. This Court would need to make identical findings to support a nondischargeability determination. *See In re Adalian,* 474 B.R. 150, 160 (Bankr. M.D. Pa. 2012) (noting that for a section 523(a)(2)(A) claim, the plaintiff must establish the plaintiff made certain representations knowing they were false). Therefore, such findings are given preclusive effect, preventing the Debtor from challenging them.

5

## III. DISCUSSION

The Debtor and the Plaintiffs dispute whether the Debtor made the false representations in the Disclosure Statement with the intent and purpose of deceiving the Plaintiffs. The Debtor argues that because English is the Debtor's second language and because he allegedly did not read the Disclosure Statement, he cannot have intended to deceive the Plaintiffs with it. The Plaintiffs argue that the Court may infer the Debtor's intent to deceive from the magnitude of the concealed defects, the numerous inconsistencies between the Disclosure Statement and the Property's condition, as well as from the Debtor's reckless disregard for the Disclosure Statement's accuracy. The Court agrees that those circumstances allow the Court to infer that the Debtor made false representations in the Disclosure Statement intending to deceive the Plaintiffs so that they would purchase the Property.

### a. Intent to Deceive for Section 523(a)(2)(A) Claims

To sustain a § 523(a)(2)(A) claim, the plaintiff has the burden of proving by a preponderance of the evidence that the debtor acted with the intent and purpose of deceiving the creditor.[6] *In re Adalian*, 474 B.R. 150, 160 (Bankr. M.D. Pa. 2012); *In re Antonius*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006). However, because a debtor "will rarely, if ever, admit that deception was his purpose," intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *In re Reynolds*, 193 B.R. 195, 200 (D. N.J. 1996); *In re*

---

[6] Section 523(a)(2)(A) claims based on false representations require the party objecting to discharge to prove by a preponderance of the evidence that: (1) the debtor made representations knowing they were false; (2) the debtor made representations with the intent and purpose of deceiving the objecting party; (3) the objecting party justifiably relied on the debtor's false representations; and (4) the objecting party suffered a loss or damage as a proximate consequence of the representations having been made. *In re Adalian*, 474 B.R. at 160; *In re Antonius*, 358 B.R. at 182.
  As discussed, the Court concluded on summary judgment that collateral estoppel prevents the Debtor from challenging the CCP's findings that (1) the Debtor knowingly made false representations and (2) the Plaintiffs sustained damages as a result of those misrepresentations. ECF 44; Mot. Ex. 1 at 3, 6. The Debtor conceded at the summary judgment hearing that the Plaintiffs justifiably relied on the Disclosure Statement. Tr. Summ. J. p. 7 lines 4-5.

6

*Robbins*, 562 B.R. 83, 109 (Bankr. E.D. Pa. 2016); *In re Ortiz*, 514 B.R. 762, 768 (Bankr. D. N.J. 2014) (citing *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118–19 (3d Cir.1995)); *In re Singh*, 433 B.R. 139, 161 (Bankr. E.D. Pa. 2010); *In re Giquinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008). Selective disclosure of only favorable facts about a property may establish intent to deceive. *See In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir. 1997); *In re Freedman*, 431 B.R. 245, 257 (Bankr. S.D. Fla. 2010).

Courts may also infer intent to deceive from a debtor's reckless disregard for the truth. *In re Bocchino*, 794 F.3d 376, 380-82 (3d Cir. 2015); *In re Cohn,* 54 F.3d at 1119; *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (quoting *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)); *In re Ortiz,* 514 B.R. at 768. "Reckless indifference to the truth is sufficient to prove the requisite intent to deceive…Thus a reckless disregard for the truth of a statement will fulfill both the knowledge element and the intent to deceive element." *In re Cohen*, 185 B.R. 171, 177-78 (Bankr. D.N.J. 1994). Furthermore, "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent to deceive." *In re Freedman,* 431 B.R. at 257. Ultimately, "where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *In re Giquinto,* 388 B.R. at 166. Once a creditor introduces circumstantial evidence sufficient to infer the debtor's intent to deceive, the debtor cannot overcome that inference with merely unsupported assertions of honest intent. *In re Reynolds,* 193 B.R. at 200.

b. **The Court May Infer from the Totality of the Circumstances That the Debtor Made False Representations in the Disclosure Statement with the Intent And Purpose of Deceiving the Plaintiffs.**

The Plaintiffs provided sufficient circumstantial evidence to infer that the Debtor made false representations in the Disclosure Statement with intent to deceive the Plaintiffs so that they would purchase the Property. The Disclosure Statement concealed serious and, in some cases, dangerous defects which would have jeopardized the Debtor's ability to sell the Property if discovered. Facing a precarious financial situation that required the Debtor to sell the Property quickly, the Debtor had plenty of motivation to misrepresent and conceal the Property's defects in order to expedite its sale. Ultimately, the number of knowing, material, false representations and omissions throughout the Disclosure Statement hiding *major* issues in the Property compels the Court to infer that the Debtor intended to deceive the Plaintiffs into believing the Property was in far better condition than it actually was.

With regard to the Debtor's allegation that the Debtor may not have read or understood the Disclosure Statement before signing it, the Court has no basis to assess the credibility of such allegation because the Debtor decided not to attend trial. Moreover, even if such allegation was true, the Debtor's failure to do so constitutes reckless disregard for the Disclosure Statement's accuracy. The Debtor's reckless disregard for the accuracy of a statement that the Plaintiffs would reasonably and understandably rely upon establishes as a matter of law that the Debtor acted with intent to deceive, satisfying the section 523(a)(2)(A) scienter requirement. *See In re Cohn*, 54 F.3d at 1119; *In re Freedman*, 431 B.R. at 257; *In re Cohen*, 185 B.R. at 177-78.

IV. **CONCLUSION**

The Judgment is nondischargeable because the Plaintiffs have demonstrated all elements necessary to sustain a § 523(a)(2)(A) claim - that (1) the Debtor made representations in the

8

Disclosure Statement knowing they were false; (2) the Debtor made those representations with the intent and purpose of deceiving the Plaintiffs; (3) the Plaintiffs justifiably relied on the Debtor's false representations; and (4) the Plaintiffs suffered damage as a proximate consequence of the representations made. Judgment will be entered in favor of the Plaintiffs and against the Debtor.

Date: August 27, 2018

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge